**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| G & G INVESTMENTS, INC., ) | |
| ) | |
| Debtor, ) | Civil Case No. 10-374 |
| ) | |
| ROBERT SHEARER, ) | |
| Chapter 7 Trustee for ) | (Appeal related to |
| G & G Investments, Inc., ) | Bankruptcy Case No. 07-27811) |
| Appellant ) | |
| ) | |
| v. ) | |
| ) | |
| PETRA BUSCHMEIER, ) | |
| ) | |
| Appellee ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

**I.   INTRODUCTION**

Pending before the court is an appeal from the January 21, 2010 order (the "Order") issued by the United States Bankruptcy Court for the Western District of Pennsylvania and entered in Bankruptcy Case No. 07-27811 filed by debtor G&G Investments, Inc. ("G&G" or "debtor"). (ECF No. 1-1).  Appellant Robert Shearer, Chapter 7 Trustee for G&G ("trustee" or "appellant") pursuant to 28 U.S.C. § 158(a) filed this appeal from the Order.   In the Order the bankruptcy court declined to exercise jurisdiction over the trustee's objection to the claim of appellee Petra Buschmeier ("Buschmeier" or "appellee") against the bankruptcy estate and denied that objection, with prejudice.   This court has jurisdiction over the appeal pursuant to 28 U.S.C. §§ 157, 1334.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408, 1409.

The primary issue raised on appeal is whether the bankruptcy court abused its discretion in denying the trustee's objection to Buschmeier's claim against the bankruptcy estate.   The

trustee argued he was improperly denied a period of discovery to substantiate allegedly newly discovered evidence of fraud by Buschmeier. If the initial "inference" of fraudulent conduct by Buschmeier during arbitration was proven true, the trustee argued that the claim against the bankruptcy estate must be dismissed because the arbitration award would be invalid. For the following reasons, this court will AFFIRM the order of the bankruptcy court.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

The following procedural and factual background is taken from the hearing before the bankruptcy court (ECF No. 6-1), the parties' designated record on appeal (ECF Nos. 1-11, 1-17), and the Order (ECF No. 1-1).

*Contract to acquire a German limited partnership*

The foundation of this appeal was laid in the late 1990s when G&G was considering acquiring Hermann Heye ("Heye"), a German limited partnership that manufactured and marketed glass containers, glass making equipment, and technology for the food and brewing industries. Two executives of Anchor Glass Container Corporation ("Anchor") recommended the acquisition. G&G is the parent corporation of Anchor. Prior to the acquisition, Buschmeier owned approximately sixty percent of the partnership interests in Heye. On April 16, 1998, G&G indicated to Buschmeier that it had a serious interest in acquiring Heye. A number of financial backers were to help provide G&G with the consideration necessary for the acquisition.

On September 5, 1998, G&G and Buschmeier entered into a purchase agreement for G&G to acquire a fifty-one percent stake in Heye. The executed agreement specifically provided that all disputes arising out of the contract would be resolved under the rules of the International Chamber of Commerce ("ICC") in arbitration and that the contract would be

governed by the laws of the Federal Republic of Germany. The deal was valued at 128,000,000.00 Deutsche Marks ("DEM"). G&G was to pay the purchase price in installments, beginning with a 30,000,000.00 DEM payment to Buschmeier on September 8, 1998.

After G&G signed the agreement with Buschmeier, G&G's financial backers determined more due diligence was required before formally agreeing to provide G&G with support. Due to a tight deadline, Anchor loaned 30,000,000.00 DEM to G&G for the first installment payment to Buschmeier. G&G's financial backers subsequently withdrew their support, and left G&G solely responsible for the remainder of the contract payments. As a result of G&G's inability to find additional financing and Buschmeier's alleged refusal to cooperate during the due diligence process, G&G stated that it was exercising an alleged right to rescission and on February 10, 1999, demanded the return of 30,000,000.00 DEM from Buschmeier. Buschmeier refused to return the money and countered that G&G had no valid right of rescission.

*Arbitration proceedings in Germany and enforcement of award in the United States*

On March 20, 2000, G&G filed a request for arbitration in Germany. Buschmeier filed a counterclaim in arbitration on August 31, 2000. On May 30, 2001, Heye filed a voluntary insolvency petition. On December 21, 2001, the arbitration panel determined that G&G had no right of rescission under the contract and was not entitled to the return of money paid to Buschmeier. G&G was found liable to Buschmeier for the remaining monies owed under the contract and the costs of arbitration.

On March 28, 2002, Buschmeier filed a Complaint in Application to Confirm Foreign Arbitration Award Pursuant to 9 U.S.C. § 207 in the United States District Court for the Western District of Pennsylvania. *Buschmeier v. G&G Investments, Inc.*, Civ. Action No. 02-0610 (W.D.

Pa.). G&G attempted to block enforcement of the arbitral award by asserting, among other arguments, an exception to the law requiring enforcement of foreign arbitral awards. The district court in a memorandum order, followed the recommendation of a magistrate judge after pretrial proceedings and determined that G&G did not satisfy the requirement for refusing enforcement of an award under article V of the International Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *Id.*, slip op. at 2, 7 (W.D. Pa. July 14, 2003)(Docket No. 29). On July 14, 2003, judgment in favor of Buschmeier in the amount of the arbitral award was entered by the district court. *Id.*, (W.D. Pa. July 14, 2003)(final judgment order) (Docket No. 30).

*Anchor lawsuit against Buschmeier*

In 2001, approximately one month prior to the decision of the arbitration panel, but after arbitration had begun, Anchor filed suit against Buschmeier in the United States District Court for the Northern District of Indiana. *See Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 876 (7th Cir. 2005) (provides a concise summary of the dispute between G&G and Buschmeier and the arbitration proceedings). Anchor sought the return of the 30,000,000.00 DEM loaned to G&G, suing on the theories of breach of contract, fraud, promissory estoppel, conversion, and unjust enrichment. *Id.* Following the arbitration decision in Buschmeier's favor, she moved to dismiss the action before the district court. *Id.* The district court granted the motion, finding that Anchor's claims were barred by res judicata under Pennsylvania law. *Id.* The district court applied a choice of law analysis and determined that Pennsylvania law was applicable. Res judicata in Pennsylvania requires common identity of 1) the thing sued upon, 2) the cause of action, 3) the parties, and 4) the capacity of the parties. *Id.* at 877.

Anchor appealed and argued that there was no common identity of the claims or parties. The Court of Appeals for the Seventh Circuit affirmed the decision of the district court, holding that the claims and parties involved in the arbitration and district court cases were not sufficiently distinct to avoid the application of res judicata. *Id.* at 877.

With respect to common identity of the claims, the court of appeals noted that in Pennsylvania, it is the acts and transactions underlying a claim that must have "essential similarity" to subject a claim to res judicata. *Id.* at 878. Differing legal theories of recovery are not enough, alone, to distinguish claims. *Id.* In both the arbitration and Anchor's litigation, the parties sought the return of the same money from Buschmeier, and grounded their legal theories on the same events, surrounding facts, witnesses, and documents. *Id.* Anchor argued that the claims differed because Anchor was focusing on different claims of fraud and oral representations made by Buschmeier's husband while the arbitration focused upon contested language in a letter between Buschmeier's husband and G&G. *Id.* To resolve the issue of contested language in the letter, the parties in arbitration explored the same conversations between Buschmeier's husband and G&G that would be at issue in Anchor's case. *Id.* Anchor's distinction was, therefore, without merit. *Id.* The court of appeals found common identity of the causes of action because res judicata applies to claims that "'could and should have been more fully developed'" in the first action, and "'subsequent claims that *could have been* litigated in the prior action.'" *Id.* (quoting *Chada v. Chada,* 756 A.2d 39, 43 (Pa. Super. Ct. 2000)).

With respect to the common identity of the parties, the court of appeals held that under Pennsylvania law res judicata applies to parties in privity. *Id.* at 879. "Privity connotes 'those

5

so connected in law with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right.'"  *Id.* (quoting *Day v. Volkswagenwerk AktiengesellschaftI,* 464 A.2d 1313, 1317-18 (Pa. Super. Ct. 1983)).   The remedies and interests sought in both actions were identical.  *Id.*    G&G was the parent company of Anchor, and executives for Anchor suggested the acquisition of Heye - one of whom acted as a principal negotiator for the deal.  *Id.* at 880.   The court of appeals held that "it would strain credulity to find that the interests of Anchor and G&G were so distinct that they are not aligned for purposes of res judicata."  *Id.*    The dismissal of Anchor's action against Buschmeier was affirmed on October 18, 2005. *Id.* at 872.

### *Bankruptcy proceedings*

On December 11, 2007, G&G filed for relief under Chapter 7 of the Bankruptcy Code in the Western District of Pennsylvania.  On August 25, 2008, the trustee was appointed to oversee the bankruptcy estate.  Buschmeier filed a claim against the bankruptcy estate on December 22, 2008.  On February 3, 2009, the trustee filed for, and was permitted to retain, special counsel for the purpose of investigating Buschmeier's claim against the bankruptcy estate.   The trustee filed an objection to Buschmeier's claim on November 3, 2009.   The trustee argued that the bankruptcy court should reject Buschmeier's claim because alleged fraud in the arbitration process invalidated the arbitration panel's decision and precluded enforcement by courts in the United States.   Specifically, the trustee alleged that Buschmeier utilized fraudulent documents and perjured testimony during the arbitration process.   The trustee alleged that the fraud was not discovered until well after the district court in the Western District of Pennsylvania entered final judgment in favor of Buschmeier.

6

On December 18, 2009, Buschmeier responded to the trustee's claim. Buschmeier argued the objection was meritless and was filed to interfere with Buschmeier's efforts to satisfy her award. Buschmeier claimed that 1) allegations of fraud and perjured testimony are not sufficient under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., to allow nonrecognition of the award, 2) the principles of comity and res judicata would be violated in failing to enforce the award in her favor, and 3) the objection was filed beyond the limitations period for asserting allegations of fraud.

The trustee requested the bankruptcy court to permit an additional six months for discovery with respect to allegations of fraud by Buschmeier during the arbitration. The trustee wished to depose confidential informants - German nationals - who allegedly stated that Buschmeier engaged in fraudulent conduct in seeking the arbitration award. The bankruptcy judge criticized the request, finding that in the six years following the entry of a final judgment, no such issue had ever been raised. The trustee argued that because the fraud only recently became known, any limitations period should be tolled until discovery could be conducted to determine whether the accusations of fraud had merit. The trustee's proof was in the form of an investigative report which purportedly lead to an "inference of fraud." The trustee alleged that Buschmeier had been convicted of a similar fraud-related crime in Germany. Buschmeier denied the accusations and argued that there may have been evidence that G&G acted fraudulently during the arbitration process. On January 6, 2010, a hearing was held before the bankruptcy court and the trustee's request for an additional period of discovery was denied by the bankruptcy court. On January 21, 2010, the Order was entered in which the bankruptcy court declined to exercise jurisdiction over the trustee's objection and denied the objection.

On February 5, 2010, the trustee filed an Amended Notice of Appeal. The trustee's Statement of Issues on Appeal Pursuant to Rule 8006 was submitted on February 26, 2010. The matter is fully briefed and the record on appeal was designated by the parties.

## III.     STANDARD OF REVIEW

Federal district courts have appellate jurisdiction over final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a)(1). Rule 8013 of the Federal Rules of Bankruptcy Procedure provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

FED. R. BANKR. P. 8013. The Court of Appeals for the Third Circuit has held that when a district court examines a bankruptcy court's decision, legal determinations are reviewed *de novo*, factual findings are reviewed for clear error, and discretion is reversed for abuse. *Official Comm. of Unsecured Creditors of J. Allan Steel Co. v. Nucor-Yamato Steel Co. (In re J. Allan Steel Co.)*, 336 B.R. 226, 228-29 (W.D. Pa 2005) (citing *Zisholtz v. Goldstein (In re Martin's Aquarium, Inc.)*, 98 F. App'x 911, 913 (3d Cir. 2004)); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989); *see Cohen v. KB Mezzanine Fund, II, LP (In re Submicron Systems Corp.)*, 432 F.3d 448, 453-54 (3d Cir. 2006); *The Official Comm. of Unsecured Creditors of New World Pasta Co. v. New World Pasta Co.*, 322 B.R. 560, 564-65 (M.D. Pa 2005). Mixed questions of fact and law must be broken down and reviewed under the applicable standards. *Id.*

The decision to reopen bankruptcy proceedings for adversarial proceedings is a matter of discretion on the part of the bankruptcy court. *In re Martin's Aquarium*, 98 F. App'x at 913. Decisions regarding discovery management and the scope of discovery are also discretionary. *In re Mazzocone*, 200 B.R. 568, 573 (E.D. Pa. 1996). To find abuse of discretion in such instances, "'it is usually necessary to conclude that there has been an interference with a substantial right, or that the discovery ruling is seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case.'" *Id.* (quoting *Public Loan Co. v. Fed. Deposit Ins. Corp.*, 803 F.2d 82, 86 (3d Cir. 1986)); s*ee In re W.R. Grace & Co.*, 316 F. App'x 134, 137 (3d Cir. 2009).

**IV.    DISCUSSION**

While the trustee contends that the bankruptcy court abused its discretion in denying his objection to Buschmeier's claim and by failing to grant discovery regarding allegedly newly discovered evidence, Buschmeier argues that the bankruptcy court acted appropriately because the trustee's desired course of action is barred by the limitations period under Federal Rule of Civil Procedure 60, FAA provisions and the doctrine of res judicata. Each argument raised by Buschmeier will be addressed because they are dispositive.

*A. Rule 60*

The judgment relevant to this matter is the July 14, 2003 judgment entered in favor of Buschmeier against G&G by the district court (W.D. Pa. Civ. Action No. 02-0610 (Docket No. 30)). That judgment is the basis for the claim filed by Buschmeier against the bankruptcy estate of G&G. In order for the trustee to prevail on appeal, he must obtain relief from that judgment.

Rule 60 provides grounds upon which a party may seek relief from a judgment or order of

9

court. The specific provisions relevant to the present case are Rule 60(b)(2), (c)(1), and (d) which provides:

> **Rule 60. Relief from a Judgment or Order**
> . . .
> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:**. . .**
>> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> . . .
> **(c) Timing and Effect of the Motion.**
>> **(1)** *Timing.* A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.
> . . .
> **(d) Other Powers to Grant Relief.** This rule does not limit a court's power to:
>> **(1)** entertain an independent action to relieve a party from a judgment, order, or proceeding; **(2)** grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or **(3)** set aside a judgment for fraud on the court.

FED. R. CIV. P. 60(b)(2), (c)(1), (d).

Rule 60(b)(2) allows for relief from a final judgment or order when, by motion, a party provides "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2). This motion, however, must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1). Yet, even if this limitations period cannot be met, Rule 60(d)(1)-(3) allows a court to set aside a judgment through an independent action for fraud or for fraud upon the court.

10

The trustee makes two arguments based upon Rule 60: first, equitable tolling should be applied to allow discovery into, and presentation of, newly discovered evidence of fraud by Buschmeier during arbitration; and second, even if equitable tolling is not available, the trustee's objection should be allowed to proceed as an independent action. (ECF No.6 at 24-26).

Buschmeier asserts the trustee's Rule 60 arguments should not be considered because no such arguments were raised by the trustee prior to this court's order striking appellant's first brief and directing that appellant address Rule 60, among other things, in an amended brief. (ECF No. 7 at 11). Buschmeier argues that trustee failed to articulate adequately any support for his contention that equitable tolling or an independent action allows him to seek to avoid the arbitration award beyond Rule 60's relevant limitations period of one year. (*Id.* at 12-15).

As stated in the trustee's revised brief, following the filing of Buschmeier's claim, the trustee decided to undertake an investigation of the circumstances surrounding the parties' arbitration to look for evidence of wrongdoing which would justify objecting to the claim. (ECF No. 6 at 12). The bulk of this investigation was conducted by a "German private investigator." (*Id.*). The investigator reviewed documents submitted by Heye to G&G in the course of due diligence, and documents utilized by Buschmeier during arbitration, and interviewed persons directly involved with the proceedings conducted prior to the present action. (*Id.*) Based upon the investigator's findings, the trustee was allegedly lead to believe the arbitration process was tainted by fraud. (*Id.* at 12-13). The trustee asserts that this investigation constitutes newly discovered evidence of fraud under Rule 60(b)(2), and further discovery is, therefore, justified. (*Id.* at 12-13). The trustee contends in a conclusory fashion that this evidence could not have been previously uncovered by the exercise of any degree of diligence. (*Id.* at 13).

11

Use of Rule 60(b)(2) is "'extraordinary relief which should be granted only where extraordinary justifying circumstances are present.'" *Perricone v. Clarke*, No. Civ. A. 9606248, 1999 WL 1067865, at *3 (E.D. Pa 1999) (quoting *Plisco v. Union R.R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967)). The party attempting to use Rule 60(b)(2) must show that it was "'excusably ignorant'" of the evidence, and could not have discovered the evidence prior to trial with the exercise of due diligence. *Id.* at *2 (quoting *Plisco*, 379 F.2d at 16). What the trustee avers in the present case does not meet this standard.

  The trustee makes no allegations or showing with respect to G&G's or his efforts to uncover fraud prior to the filing of Buschmeier's claim against the bankruptcy estate, or why waiting until that point constituted the exercise of due diligence because of an inability to engage in discovery earlier. The trustee states that the private investigator based his conclusion that Buschmeier had committed fraudulent acts during arbitration on evidence and witnesses. There is no argument that the evidence and witnesses were unavailable to G&G during and after the arbitration process. Those circumstances do not show excusable ignorance or extraordinary circumstances. The court would be hard pressed to find that the trustee's proposed evidence qualifies as new evidence that could not have been discovered with reasonable diligence at an earlier time. Also, given the nature of the evidence reviewed by the private investigator, and there being no allegation or showing that it was not previously available or discoverable by both parties, the trustee fails to justify the necessity of creating a sealed record for *in camera* review. It is worthwhile noting that proof of Buschmeier's alleged conviction for bribery and perjury in Germany were not provided to the bankruptcy court by the trustee. There would be no need for *in camera* review of such a conviction. Under these circumstances, relief under Rule 60(b)(2)

12

is not available.

Even if Rule 60(b)(2) were applicable, equitable tolling is not available here to avoid the bar of the limitations period in Rule 60(c)(1). Equitable tolling can avoid the bar of a statute of limitations when sufficiently inequitable circumstances preclude filing for Rule 60 relief in a timely manner under Rule 60(c)(1). *See Perry v. Pennsylvania*, 328 F. App'x. 785, 787 (3d Cir. 2009) (citing *Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). Equitable tolling is applied sparingly as an extraordinary remedy. *Id.*

> This occurs (1) where the [opposing party] has actively mislead the [moving party] respecting the . . . cause of action; (2) where the [moving party] in some extraordinary way has been prevented from asserting his or her rights; or (3) where the [moving party] has timely asserted his or her rights mistakenly in the wrong forum.

*Id.* Equitable tolling is not warranted where the moving party has not exercised due diligence. *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). A party cannot seek to invoke equitable principles to excuse a lack of diligence. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). Lastly, equitable tolling should not be invoked easily, because "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Id.* at 153 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

The trustee made no averments that could satisfy the requirements for allowing equitable tolling under *Perry*. As this court found with respect to Rule 60(b)(2), the trustee failed to describe how G&G's or his efforts on behalf of G&G to uncover fraudulent activity on the part of Buschmeier met any diligence standard in light of the number of years that elapsed since the arbitration and that the evidence since arbitration

was only recently reviewed. No evidence of due diligence was alleged or provided. Therefore, equitable tolling is not justified.

With respect the trustee's desire to classify this claim as an independent action, Rule 60 allows for separate independent actions for fraud and for fraud on the court. *Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1021 (3d Cir. 1987). For a claim to qualify as an independent action, generally under Rule 60(d), it must be shown that departure from the limitations period and res judicata is necessary to avoid a "sufficiently gross," "grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 46-47 (1998). The independent action is still subject to laches and the statute of limitations for the underlying claim. *Averbach,* 809 F.2d at 1020. Here, the trustee failed to plead fraud as an independent action under any statute or case law. The trustee did not show how the requirements of *Beggerly* are met. Under those circumstances, the trustee did not make allegations that would implicate a basis for an independent action for fraud.

Regarding an independent action for fraud on the court, the Court of Appeals for the Third Circuit has determined that kind of action can be permitted only in the case of "'the most egregious misconduct directed to the court itself,' and . . . it 'must be supported by clear, unequivocal and convincing evidence.'" *Herring v. United States*, 424 F.3d 384, 387 (3d Cir. 2005) (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976)). The requirements such a claim must meet, are: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Id.* at 386. Witness perjury is not sufficient. *Id.* at 390. In the present case, the trustee vaguely asserts that

the averments of the private investigator "give rise to the belief that the investigation, when and if completed, could substantiate averments of fraud rising to the level" required by relevant case law. (ECF No. 6 at 26).  That allegation is insufficient to illustrate a "most egregious misconduct directed to the court itself," and there is no allegation supporting a clear, unequivocal and convincing showing of any of the factors discussed in *Herring*.  The trustee's argument that this claim qualifies as an independent action for fraud upon the court lacks merit.

### B. FAA & Claim Preclusion

Section 201 of the FAA[1] addresses enforcement of arbitral awards falling under the Convention.  9 U.S.C. § 201.  Section 207[2] allows a court to not enforce an award if one of the provisions under article V[3] of the Convention would allow a court to do so.

---

[1]

§ 201. Enforcement of Convention

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.

9 U.S.C. § 201.

[2]

§ 207. Award of arbitrators; confirmation; jurisdiction; proceeding

The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C.. § 207.

[3]

*Article V*
1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:(*a*) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or(*b*) The party against whom the award is invoked was not given proper notice of the appointment of the

Section 10[4] of the FAA provides general grounds upon which arbitration awards subject to the FAA may be vacated. Section 208 of the FAA, however, provides that while § 10 may apply to arbitral awards under the Convention, it may do so only to the extent it is not inconsistent with the Convention or 9 U.S.C. §§ 201, *et seq.*

The trustee seeks to avoid enforcement of the arbitration award under article V of the Convention by relying upon § 10(a)(1) of the FAA as support for his contention that

---

arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or(*c*) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or(*d*) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or(*e*) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:(*a*) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or(*b*) The recognition or enforcement of the award would be contrary to the public policy of that country.

21 U.S.T. 2517.

4

§ 10. Same; vacation; grounds; rehearing

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration–
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
(c) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

9 U.S.C. § 10.

enforcement of the arbitration award would violate public policy. (ECF No. 6 at 21-22). Section 10(a)(1) allows the court to vacate an award where it "was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1).

Buschmeier notes that the bankruptcy court denied the trustee's objection, and argues that the bankruptcy court correctly based that decision upon the preclusive effect of final determinations made by a number of tribunals prior to the trustee's objection. (ECF No. 5 at 24-29). When entering a final judgment of enforcement of the arbitral award, the district court specifically found that none of the Convention's provisions allowing a court to avoid enforcement of a foreign arbitral award were established by G&G. *Buschmeier v. G&G Investments, Inc.*, Civ. Action No. 02-0610, slip op. at 7 (W.D. Pa. July 14, 2003) (Docket No. 29)). G&G did not appeal this decision. Buschmeier argues that the trustee should not now be able to argue that a Convention provision would allow the bankruptcy court to refuse to accept Buschmeier's claim - the same claim recognized by the district court's order. (*Id.*).

A claim against a bankruptcy estate arising from a prior judgment may be collaterally attacked by a bankruptcy trustee; however, the collateral attack may be doomed by res judicata. *Pepper v. Litton*, 308 U.S. 295, 306 n.13 (1939). Federal res judicata, or claim preclusion, "'requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action.'" *Smith v. Cowden (In re Cowden)*, 337 B.R. 512, 529 (Bankr. W.D. Pa 2006) (quoting *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 203 (3d Cir. 1999)); s*ee Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*, 746 F.2d 977, 983 (3d

17

Cir. 1984).

The trustee asserts that the grounds upon which he bases his objection - fraud by Buschmeier in obtaining an arbitration award - was not a claim raised in any earlier proceedings by *appellant*. (ECF No. 6 at 20-21). Even if the court were to overlook the potential preclusive effect of Anchor's suit against Buschmeier, in which fraud was alleged, the facts still weigh in her favor. The trustee contends that his newly discovered evidence of fraud was derived from a private investigator's inspection of documents submitted by Heye to G&G in the course of due diligence and utilized by Buschmeier during arbitration, and interviews with persons directly involved in earlier proceedings. (*Id.* at 12-13). The trustee states that the claim against Buschmeier in arbitration involved averments that "documents provided [by Buschmeier] were incomplete, misleading and did not disclose the bankruptcy of a Heye affiliate." (*Id.* at 11). The trustee acknowledges that G&G based the defense against entry of final judgment in the Western District of Pennsylvania on article V of the Convention, arguing enforcement of the arbitration award would be against public policy. (*Id.* at 20). The trustee argues that res judicata does not apply to this action, however, because the argument in the arbitration was focused upon the meaning of a putative right of rescission, and the article V argument in the district court was based upon impossibility of performance by Buschmeier under the contract - not fraud. (*Id.*).

The trustee's argument is unavailing. "Whether two lawsuits are based on the identical cause of action 'turn[s] on the essential similarity of the underlying events giving rise to the various legal claims.'" *Bd. of Tr. of Trucking Emps. of North Jersey Welfare*

18

*Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992) (quoting *Athlone Indus.*, 746 F.2d at 983). "Courts should . . . focus on the central purpose of [claim preclusion], to require a plaintiff to present all claims arising out of the same occurrence in a single suit." *Id.* Different claims derived from different statutes, different theories of recovery, and different requests for relief do not necessarily prevent application of res judicata principles to a particular claim. *Athlone Indus.*, 746 F.2d at 984. "[T]he focal points of our analysis are whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." *Id.* In essence, it must be determined whether the current claim could have been raised in a prior proceeding. *Cowden*, 337 B.R. at 529 (citing *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 203 (3d Cir. 1999)).

It was inspection of certain evidence by a private investigator that constituted the trustee's "new evidence" of fraud. (ECF No. 6 at 12-13). Yet the trustee provided no explanation for why this evidence *presently* leads to an inference of fraud, but did not create such an inference during arbitration or the prior district court action. The trustee's allegations that during arbitration "documents provided by [Buschmeier] were incomplete, misleading and did not disclose the bankruptcy of a Heye affiliate," belie the trustee's assertion that fraud could not previously have been inferred or raised in prior legal proceedings. (*Id.* at 11). In this court, as before the district court and arbitration panel, what is being sought is the ability of G&G to avoid enforcement of its responsibilities under the contract with Buschmeier. Though the legal theories advanced by the trustee and G&G differed in each action, each action had the same purpose. Irrespective of the

19

action brought by Anchor, G&G sought to avoid enforcement of its contract with Buschmeier before two different tribunals, and given that there are no allegations to refute the ability of G&G with the exercise of due diligence to have raised a claim of fraud in those two actions, and its failure to do so, this current action is barred by the principles of res judicata. Discussion of Buschmeier's other arguments based upon FAA and Convention provisions is unnecessary.

## V. CONCLUSION

For the reasons set forth above, the bankruptcy court did not abuse its discretion in denying the trustee's objection and not permitting further discovery with regard to the allegedly newly discovered evidence. The trustee failed to show the existence of any fundamental unfairness or interference with a substantial right by the bankruptcy court's decision, particularly in light of the trustee's failure to allege or show that he could meet the requirements under Rule 60 for avoiding a judgment, and because this claim is otherwise precluded by the doctrine of res judicata.

The bankruptcy court's decision will be affirmed. An appropriate order will follow.

*s/ Joy Flowers Conti*
Joy Flowers Conti
United States District Judge

Dated: November 30, 2010